THE HOME INDEMNITY COMPANY *v.*
BASILIKO, ET UX.

[No. 47, September Term, 1966.]

*Decided February 10, 1967.*

The cause was submitted to HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

Submitted on brief by *H. Thomas Sisk* for appellant.

Submitted on brief by *James J. Cromwell* and *Clark & Cromwell* for appellees.

HORNEY, J., delivered the opinion of the Court.

After The Home Indemnity Company became subrogated to the rights of the insured architects (Terry Horowitz and Walter Seigel) when it paid for the damage to their equipment, drawings and papers caused by water leaking from an air conditioning unit, the insurer sued the owners (Nick and Helen Basiliko) of the building in which the architects had an office.

In its declaration, the insurer, proceeding under the doctrine of *res ipsa loquitur* and without mentioning the written lease between the landlords as lessors and the tenants as lessees, alleged negligence on the part of the lessors in failing to properly maintain the air conditioning unit over which they had exclusive control. The lessors, however, instead of filing a plea, demanded the filing of the lease on which they proposed to base their defense. The insurer opposed the demand by stating that the suit was not founded on the lease, but the court ordered that it be filed and the declarant complied with the order. Whereupon, the lessors filed a demurrer in which it was alleged in effect that neither the tenant nor the subrogee could sue the landlords because an exculpatory clause in the lease absolved the landlords from all responsibility for loss or damage. Specifically, the clause referred to provides:

> "Landlord shall not be responsible for loss of or damage to property of Tenant in said building caused by fire or other casualty, or by any acts of negligence of co-tenants or other occupants of said building or any other person, or by rain or snow or water or steam that may leak into or flow from said building through

any defects in the roof or plumbing or from any other source."

The lower court sustained the demurrer without leave to amend and this appeal followed.

Maryland Rule 326, concerning the production of written instruments, provides in part that—

"Where any cause of action or defense is founded upon a written instrument, any party shall, upon written demand of the opposite party served upon him within the time allowed for pleading, file in the proceedings such instruments or a true or photostatic copy thereof, which, when filed, shall be treated as if incorporated in the pleading."

Accordingly, the basic question for consideration on this appeal is whether or not the lower court erred in requiring the subrogee to incorporate the lease into the declaration and then permitting the lessors to interpose a demurrer on the premise that the lease excused the negligence of the lessors.

Prior to the enactment of what is now § 14 (105) of Article 75 of the Code of 1957, the opposite party was entitled to oyer only in those cases in which profert was necessary. See *State use of Kelley v. Wilson,* 107 Md. 129, 68 Atl. 609 (1908). However, the adoption of Rule 326 had the effect of changing the practice by extending the right to oyer to every written instrument which is shown to be the basis of the action or the defense thereto for which written demand is made of the opposite party.

We think the lower court was correct in ordering the inclusion of the lease in the declaration and then sustaining the demurrer. The lease formed an integral and, in this case, the determinative part of the defense. The subrogee was not obliged to file the lease with its declaration, but when it was demanded, the order to file it as well as leave to enter the demurrer were proper. *Cf. Haldas v. Commissioners of Charlestown,* 207 Md. 255, 261, 113 A. 2d 886 (1955); *Kahn v. Janowski,* 191 Md. 279, 284, 60 A. 2d 519 (1948) and *Beachey v. Heiple,* 130 Md. 683, 693, 101 Atl. 553 (1917). Like the discovery rules (Chapter 400), the purpose of Rule 326 is to expedite the disposition

of cases. Had the lessors not demanded the filing of the lease at an earlier stage of the proceeding, it would certainly have been introduced by them at the trial. And, in that event, there is little doubt that a motion for a directed verdict in favor of the lessors would have been granted. Albeit the same result, in a lesser period of time, was obtained, it is clear that the subrogee was not deprived of any rights it would otherwise have had. In *Jackson v. Pennsylvania Railroad Co.,* 176 Md. 1, 5, 3 A. 2d 719 (1939), it was pointed out that in order for a party to maintain an action in negligence against another party there must exist a duty which is owed by the defendant to the plaintiff to observe that care which the law prescribes in the given circumstances, and that a declaration which is insufficient to show a duty breached which caused the injury complained of is bad on demurrer. See also *Zamecki v. Hartford A. & I. Co.,* 202 Md. 54, 95 A. 2d 302 (1953) and *Frisch v. M. & C. C. of Baltimore,* 156 Md. 310, 144 Atl. 478 (1929).

Aside from the basic question, there is another as to whether or not the exculpatory clause in the lease absolved the lessors from damages caused by the leaking air conditioning unit. The subrogee does not contend that exculpatory clauses in leases were not binding at the time the damage in this case occurred,[1] but it does claim that the exculpatory clause in the instant lease should have been construed against the lessors in favor of the lessees for the reasons that the words of the exculpatory clause are susceptible of more than one meaning and that the instrumentality which caused the damage was not definitely specified. To the contrary, the lessors, though not denying that they had the general duty of maintaining the air conditioning unit in good repair for the benefit of the lessees, nevertheless contend that the exculpatory clause exonerated them from such negligence as was alleged in the declaration.

---

1. A lease containing an exculpatory clause was held to be valid and not against public policy under former law in Eastern Avenue Corp. v. Hughes, 228 Md. 477, 180 A. 2d 486, but Chapter 124 of the Laws of 1964, codified as § 40 of Article 53 of the Code (1966 Cum. Supp.), now precludes an exculpatory clause in a lease which exonerates a landlord from his own negligence as being "against public policy and void."

As we read it, the wording of the exculpatory clause is not ambiguous. Obviously, the clause was not skillfully drawn, but its meaning is not uncertain. Keeping in mind that the lease was concerned only with the rights and duties of the contracting parties, it would appear that the exculpatory clause had the effect of relieving the landlords from responsibility to the tenants for loss or damage to their property caused (1) *by* fire or other casualty, (2) *by* the acts of negligence of cotenants or other occupants or any other person, and (3) *by* rain or snow or water leaking into or flowing from the premises or other parts of the building through defects in the roof, plumbing or any other source.

The rule that a lease must be construed most strongly against a lessor and in favor of a lessee is only to be resorted to when the words of the lease are doubtful in their meaning or susceptible of more than one construction. *Standard Garments Co. v. Hoffman,* 199 Md. 42, 85 A. 2d 456 (1952). The declaration having been based on the alleged negligence of the lessors in permitting water to leak from the air conditioning unit into the offices of the lessees, we are not here concerned with damage caused by fire or other casualty or with damage caused by the acts of negligence of other tenants, occupants or persons. As to the damage caused by water leaking into the premises of the tenants by way of the defective air conditioning unit, it it clear, since the meaning of the words in the third category of causes is neither doubtful nor susceptible of more than one construction, that the lessors were not responsible for the damage suffered by the lessees. And this would be so regardless of whether or not the lessors were negligent in keeping the air conditioning unit in good repair. Furthermore, even if it is assumed that the unit was not a part of the plumbing system, it would not be unreasonable to include an air conditioning unit as another source from which leakage of water might be expected.

For the reasons stated the judgment will be affirmed.

*Judgment affirmed; appellant to pay
the costs.*